CARL T. PASTOR, Respondent, *v.* B. LINDNER & BRO., INC., Appellant.

First Department, November 6, 1931.

*Eugene L. Bondy* of counsel [*Bondy & Schloss,* attorneys], for the appellant.

*E. Walter Beebe* of counsel [*Brussel & Beebe,* attorneys], for the respondent.

TOWNLEY, J.  This action was to recover a balance due for goods sold and delivered to the defendant.  Defendant bought certain velvets from plaintiff's principals in Krefeld, Germany.  These velvets were made especially for the New York market.  There was no substantial denial of plaintiff's claim.  The principal controversy litigated arose out of five separate counterclaims set up in defendant's answer.  Of these counterclaims, three, Nos. 1, 4 and 5, present claims for breach of warranty of quality upon which there was a sharp conflict of testimony and which were properly disposed of by the court below.  The second and third counterclaims involve a claim by defendants for damages because of plaintiff's conceded delay in delivering the goods.

When the goods arrived they were accepted by defendant, which, however, reserved its claim for damage because of such delay.  Prior to the contract delivery date, defendant had profitably resold the goods which it was to receive from plaintiff.  It is con-

ceded that defendant's customers accepted deliveries under these resale contracts and paid the full price therefor.

The issue on appeal presented by these counterclaims concerns the proper measure of damage. The court below allowed no recovery on them because, as it found, the defendant had in fact suffered no loss. This conclusion is based on the reasoning that, even if these goods had arrived on time, defendant could not have taken advantage of the market price, since it had obligated itself by its resale contracts to deliver them at a definite price, which price it had in fact received. Defendant claims, however, that, irrespective of this extraneous circumstance, it is entitled to have its damage determined by an arbitrary application of the rule which allows the difference between the market price in New York on the date the goods were due and the market price in New York on the date of actual delivery. (Benj. Sales [7th Am. ed.], § 873.) On the testimony of plaintiff's witness that there was no market for spot delivery of the transparent velvets involved in the second counterclaim in Krefeld, Germany, the court permitted an amendment to the answer to the effect that at the time of the making of the contracts it was contemplated by the parties that the merchandise was to be purchased for the purpose of reselling in New York and that it was contemplated by the parties that in the event the plaintiff should fail to make delivery of the merchandise in accordance with the contract, the damage which might be suffered must be based upon the market for such merchandise in New York city. Although the plaintiff took an exception to this ruling, there is no appeal therefrom. Accordingly, in estimating the damage for the breach of contract alleged, the court is bound to consider only the difference in the market price in New York on the day when the goods should have been delivered and on the day when the delivery was actually made.

It is well established that in cases of failure to deliver the measure of damages is the difference between the contract and market prices at the time and place of delivery and that such rule shall be applied irrespective of any resale contracts which may have been made by the buyer. (2 Williston Sales [2d ed.], § 599-i.) The damage, moreover, cannot be increased by any contract at a price in excess of the market and cannot be reduced by any contract under the market or by the kindness of a subvendee. (*Foglino & Co., Inc.,* v. *Webster,* 244 N. Y. 516.) In such cases there is always involved uncertainty as to execution of the resale contract. The possibility of liability on the part of the purchaser for *his* failure to deliver to his customer at the reduced price fixed by his contract remains. The rule of difference between contract and market price is now

incorporated in subdivision 3 of section 148 of the Personal Property Law (as added by Laws of 1911, chap. 571, known as the Sales of Goods Act).

The counterclaims must be considered separately. In the case of the printed velvets which are involved in the third counterclaim the goods were purchased at from four dollars and fifty cents to four dollars and seventy-five cents per yard. They were all resold at prices ranging from four dollars and fifty cents to five dollars and sixty-five cents per yard. The market price of this merchandise in New York in May, when one-third of the quantity was due, was six dollars per yard; in June, when the second installment of one-third was due, the market price was five dollars and seventy-five cents per yard; in July, when the final installment was due, the market price was four dollars and fifty cents per yard, and in August, when delivery was actually made, the market price was four dollars and twenty-five cents per yard. It is thus apparent that defendant resold the velvets at prices higher than those prevailing at the time of actual delivery of the goods.

The difficulty in applying the general rule of damage without mitigation, as defendant urges, is that defendant would get two profits out of a contract that only guaranteed it one. It would receive a profit under the resale contract which results from a sale above the market prevailing at the time of actual delivery and would receive in addition profit in the form of damages represented by the difference between the two market prices. It would thus be considerably better off because of the breach than it would have been had the contract been carried out according to its terms. Obviously, a result so unjust should not be allowed unless adherence to a fixed rule of damage compels it. The correct rule would seem to be that established by the English decisions which allows the profit which the purchaser has made under his resale contract above the market at time of delivery to be applied as a credit in mitigation of damages.

This is the rule established by the Privy Council in *Wertheim* v. *Chicoutimi Pulp Company* (L. R. [1911] A. C. 301). In that case there was involved a sale of pulp wood which defendants failed to deliver at the time fixed by their contract. Plaintiffs had made resale contracts prior to the delivery date fixed by this contract at prices which were below the market price on the date of delivery fixed by the contract but above the market price at the date of actual delivery. The court limited the damages awarded to the plaintiff to the difference between the resale price and the market price at the time and place of delivery fixed by this contract. In *Williams Brothers* v. *Ed. T. Agius, Ltd.* (L. R. [1914] A. C.

510, 522), the House of Lords had occasion to discuss the *Wertheim Case* (*supra*) and explained the decision as follows: " *Wertheim's Case* \* \* \* was a case, not of delivery withheld, but of delivery delayed. The buyer, therefore, got the goods, and the only damage he had suffered was in delay. Now, delay might have prejudiced him; but the amount of prejudice was no longer a matter of speculation, it had been put to the test by the goods being actually sold; and he was rightly, as I think, only held entitled to recover the difference between the market price at the date of due delivery and the price he actually got." This distinction has been recognized in this country in *Tennessee Fertilizer Company* v. *International Agr. Corp.* (146 Tenn. 451; 243 S. W. 81). Moreover, Williston (2 Sales [2d ed.], p. 1500, footnote) writes: " It may be said that there is no such general rule for damages for delay as is applicable to damages for total failure to perform, and that therefore this case [*Wertheim Case, supra*] is not inconsistent with the other decisions cited in this note."

In his opinion in the *Wertheim* case, Lord ATKINSON said: " The purchaser not having got his goods should receive by way of damages enough to enable him to buy similar goods in the open market. Similarly, when the delivery of goods purchased is delayed, the goods are presumed to have been at the time they should have been delivered worth to the purchaser what he could then sell them for, or buy others like them for, in the open market, and when they are in fact delivered they are similarly presumed to be, for the same reason, worth to the purchaser what he could then sell for in that market, but if in fact the purchaser, when he obtains possession of the goods, sells them at a price greatly in advance of the then market value, that presumption is rebutted and the real value of the goods to him is proved by the very fact of this sale to be more than market value, and the loss he sustains must be measured by that price, unless he is, against all justice, to be permitted to make a profit by the breach of contract, be compensated for a loss he never suffered, and be put, as far as money can do it, not in the same position in which he would have been if the contract had been performed, but in a much better position."

The equitable result reached in the *Wertheim* case can hardly be questioned. Only a desire to keep the rules of damage simple and not subject to refinements because of special circumstances in each case, could lead to a mechanical application of the difference in market prices without reference to the actual situation existent in individual cases.

The judgment on the second counterclaim, so far as appealed from, presents a different situation. The goods were transparent

velvets costing in Krefeld two dollars and fifteen cents per yard or three dollars and fifty-two cents landed in New York. All the merchandise was resold at prices ranging from four dollars to four dollars and twenty-five cents per yard, thus giving an actual profit on each yard. The goods ordered should have been delivered, one-third in May, when the market price was five dollars and eighty-five cents per yard; one-third in June, when the market price was five dollars and seventy-five cents per yard, and one-third in July, when the market price ranged from five dollars to five dollars and seventy-five cents per yard. In August, when delivery was actually made, the market price had dropped to four dollars and fifty cents per yard. An inspection of these figures reveals that at no time did the defendant resell at a price lying between the market price in New York on the date when the goods were due or the market price in New York on the date of actual delivery. In other words, on the reasoning of the *Wertheim* case, no offset is possible since the resale price was not high enough to have mitigated the damages which, in contemplation of law, flow naturally from delayed delivery.

It should be remarked that in citing market values in New York, for the purpose of illustration of the principle of damage involved, the court is not finding as a fact that such were the prices. The question of market prices, in view of the trial court's holding that there was no damage whatever, was not litigated sufficiently to permit of a definite finding by this court.

The judgment in so far as it dismisses the counterclaims Nos. 1, 4 and 5 should be affirmed; and in other respects the judgment should be reversed and the action severed and a new trial ordered in conformity with this opinion, upon the issue joined by the complaint and counterclaim No. 2, so far as appealed from, and No. 3, with costs of this appeal to the appellant to abide the event.

FINCH, P. J., MERRELL, O'MALLEY and SHERMAN, JJ., concur.

Judgment in so far as it dismisses the counterclaims Nos. 1, 4 and 5 affirmed; and in other respects judgment reversed and the action severed and a new trial ordered in conformity with opinion, upon the issue joined by the complaint and counterclaim No. 2, so far as appealed from, and No. 3, with costs of appeal to appellant to abide the event. Settle order on notice.